## ELIZABETH IAZZETTA *v.* LEO NEVAS ET AL.
### (AC 26993)

DiPentima, Gruendel and Lavine, Js.

Argued November 28, 2007—officially released February 5, 2008

*Thomas M. Cassone*, with whom, on the brief, was *Elizabeth Iazzetta*, pro se, for the appellant (named plaintiff).

*Joseph A. La Bella*, with whom was *Melissa M. Rich*, for the appellees (defendants).

*Opinion*

GRUENDEL, J. In this slip and fall case, the plaintiff, Elizabeth Iazzetta,[1] appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendants, Leo Nevas and Marc Nevas Real Estate, Inc. She alleges instructional error.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the spring of 2001, the plaintiff was employed by Fairfield County Magazine. On May 30, 2001, she arrived at its office, located at 49 Richmondville Avenue in Westport. After exiting her vehicle, the plaintiff stepped on a crack in the pavement of the parking lot and fell to the ground. At that point, the plaintiff left the premises and returned to her home.

A personal injury action against the defendants followed, at the conclusion of which the jury found in favor of the defendants. The jury interrogatories indicate that although the plaintiff had established that the defendants were negligent in some respect as she alleged, she failed to prove that their negligence was the proximate cause of her injuries.[3] The plaintiff thereafter moved to

[1] The plaintiff stated on her October 7, 2005 appeal form that she was proceeding pro se in lieu of Bello, Lapine & Cassone, LLP. On her appellate brief, the plaintiff likewise indicated that she was proceeding pro se. Prior to oral argument, attorney Thomas M. Cassone of Bello, Lapine & Cassone, LLP, entered an appearance on the plaintiff's behalf.

[2] Although the statement of issues in the plaintiff's appellate brief includes a claim that the court abused its discretion in denying her motion to set aside the verdict, that claim is neither addressed nor analyzed therein. Insofar as it differs from her principal claim, we deem it abandoned. See *State* v. *Saucier*, 283 Conn. 207, 223, 926 A.2d 633 (2007).

[3] To the extent that counsel for the plaintiff at oral argument took issue with the substance of the interrogatories submitted to the jury, we note that the issue was not briefed by the plaintiff. Accordingly, we do not afford it consideration. See *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005) ("[i]t is well settled that claims on appeal must be adequately briefed,

set aside the verdict, claiming, inter alia, that the court improperly failed to provide the jury with an "eggshell plaintiff" charge.[4] The court denied that motion and rendered judgment in accordance with the verdict of the jury. From that judgment, the plaintiff appeals.

The plaintiff claims that the court improperly failed to provide an eggshell plaintiff charge to the jury. We disagree.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . . The trial court must adapt its instructions to the issues raised in order to give the jury reasonable guidance in reaching a verdict and not mislead them." (Internal quotation marks omitted.) *Mojica* v. *Benjamin*, 64 Conn. App. 359, 368, 780 A.2d 201 (2001). "Claims of error addressed to the [jury] charge are tested by the pleadings and by the evidence . . . . The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. . . . The court should, however, submit to the

and cannot be raised for the first time at oral argument before the reviewing court"), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

[4] "The eggshell plaintiff doctrine states that [w]here a tort is committed, and injury may reasonably be anticipated, the wrongdoer is liable for the proximate results of that injury, although the consequences are more serious than they would have been, had the injured person been in perfect health. . . . The eggshell plaintiff doctrine is not a mechanism to shift the burden of proof to the defendant; rather, it makes the defendant responsible for all damages that the defendant legally caused even if the plaintiff was more susceptible to injury because of a preexisting condition or injury. Under this doctrine, the eggshell plaintiff still has to prove the nature and probable duration of the injuries sustained." (Citation omitted; internal quotation marks omitted.) *Rowe* v. *Munye*, 702 N.W.2d 729, 741 (Minn. 2005); see also W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 43, p. 292.

jury all issues as outlined by the pleadings and as reasonably supported by the evidence." (Citation omitted; internal quotation marks omitted.) *Olkowski* v. *Dew*, 48 Conn. App. 864, 868, 713 A.2d 264, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998).

The plaintiff did not plead in her complaint that the defendants' alleged negligence aggravated any preexisting condition or prior injury. See *Mojica* v. *Benjamin*, supra, 64 Conn. App. 369; *Olkowski* v. *Dew*, supra, 48 Conn. App. 868. Moreover, the plaintiff did not file an amendment of her pleading to conform to the proof that she claims was offered by the defendants regarding the aggravation of a preexisting condition or prior injury. Although the defendants raised the special defense of contributory negligence in their answer to the plaintiff's complaint,[5] they did not allege that the plaintiff had any preexisting condition or prior injury. Moreover, the defendants did not submit evidence as part of their case demonstrating that the plaintiff had any preexisting condition or prior injury. Contra *Rubano* v. *Koenen*, 152 Conn. 134, 136–37, 204 A.2d 407 (1964) (preexisting injury charge appropriate where claim of aggravation of preexisting injury not raised by plaintiff, but defendant presented expert testimony that plaintiff had sustained back injury in accident "with probable aggravation of a preexisting disc pathology at the lumbosacral level").

[5] Specifically, the defendants alleged that "(a) [the plaintiff] was inattentive and failed to keep a proper lookout, to be watchful of her surroundings and where she was walking; (b) she was inattentive to her surroundings; (c) she failed to make a reasonable and proper use of her senses and faculties to avoid injury to herself at the time and place described; (d) she failed to properly safeguard herself in relation to any conditions then and there existing; (e) she failed to observe the conditions then and there existing; (f) she failed to make an adequate and proper inspection of the premises; (g) although she was aware, or should have been aware, of the conditions then and there existing, she failed to take the necessary and proper precautions and to use reasonable care for her own safety commensurate with the existing circumstances and conditions."

The only evidence that the plaintiff discusses in her brief concerns the testimony of Silvia Knoploch, a physiatrist, who testified without objection as an expert witness on her behalf. Knoploch testified that she first treated the plaintiff in 2002, the year after her parking lot fall. During cross-examination, Knoploch testified that she diagnosed the plaintiff as suffering from chronic pain syndrome, a behavioral syndrome marked by symptom exaggeration, and anxiety syndrome. Knoploch was not questioned as to whether those conditions existed prior to the May 30, 2001 fall.[6] When asked by the defendants' counsel whether she believed that the plaintiff suffered "pain from the bulges in her lumbar spine," Knoploch testified: "No, I don't." At no time in her testimony did Knoploch opine that the plaintiff suffered from a preexisting condition or injury. To the contrary, she testified: "I didn't see her until several months after [the May 30, 2001 fall]. So, I don't have firsthand knowledge of her initial physical examination and conditions . . . ."

After the jury announced its verdict, the plaintiff moved to set it aside, claiming, inter alia, that the court improperly failed to provide an eggshell plaintiff charge. At the August 31, 2005 hearing on that motion, the court explained its decision not to include the requested charge as follows: "[I]f there was evidence that she was more susceptible to injury because she was suffering from osteoporosis or arthritis or degenerative bone disease of some sort or another or some other condition, then I think that instruction would have been entirely appropriate because, even though the injury might have had a lesser impact upon a healthy individual, she's entitled to an instruction saying that the jury is free to consider the severity of it based upon her subjective

---

[6] Although counsel for the plaintiff conducted a redirect examination of Knoploch, he did not inquire as to whether the plaintiff suffered from any conditions or injuries prior to the May 30, 2001 fall.

condition at the time of the injury, but I don't think you established anything with respect to that condition at the time of the fall, that she was a fragile, eggshell type person. So, therefore, that was the reason I declined to give that instruction . . . ." On our review of the record, we agree with the court.

The judgment is affirmed.

In this opinion the other judges concurred.