LISA LABBE *v.* MICHAEL CARUSONE
(AC 30357)

Flynn, C. J., and Bishop and Hennessy, Js.

Argued March 12—officially released July 21, 2009

*Michael J. Whalen*, for the appellant (plaintiff).

*Frank H. Cathcart*, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, Lisa Labbe, on behalf of her minor daughter, Rahshaiya Smith, appeals after a court trial from the judgment rendered in favor of the defendant, Michael Carusone. The plaintiff claims that the court improperly found that she had failed to prove (1) that the defendant transferred property in the name of Carusone Associates, LLC, to himself without receipt of a reasonable equivalent in value, (2) that the defendant committed fraud by transferring property without compensation, thereby rendering the transferor unable to meet its obligations and (3) justification for piercing the corporate veil.[1] We affirm the judgment of the trial court.

The plaintiff recovered a judgment against Carusone Associates, LLC, on May 29, 2007, in the amount of $82,533.55. That judgment stemmed from an incident in February, 2006, when Smith was scalded by hot water in the bathroom sink of 104 Bunker Avenue, Meriden

---

[1] The plaintiff's claim alleging a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., was withdrawn at trial.

(Bunker property). At the time of the incident, the plaintiff was a tenant at the Bunker property. Smith was injured prior to the time the defendant became the title owner to the property. At the time Smith was injured, Carusone Associates, LLC, was the title owner of the property and against whom the judgment was rendered. The defendant first learned of the action when he was sent notice of judgment in November, 2007.

The present action is brought by the plaintiff to recover on the judgment against Carusone Associates, LLC. The plaintiff, in a two count complaint, alleged fraud in the first count, and she attempted to pierce the corporate veil in the second count. The court found that on May 28, 2004, as part of an agreement, the defendant conveyed to Carusone Associates, LLC, six parcels of land, including the Bunker property. Also pursuant to this agreement, the defendant assigned 100 percent of his membership interest in Carusone Associates, LLC, to Meriden Associates (Meriden). Meriden pledged its membership as security for its obligations to the defendant in connection with the defendant's assignment of the membership interest. Although the defendant had no further involvement with the dealings of Carusone Associates, LLC, he continued to be personally liable on the notes and mortgages on the conveyed properties.

When Meriden failed to make the payments owed to the banks, which was part of Meriden's pledge as security for its obligation to the defendant, the defendant, in accordance with his rights under the agreement, transferred the Bunker property and the property at 1079 Broad Street (Broad property) to himself on May 3, 2006. The defendant offered to sell the properties to Samuel Braun for $25,000 to make the mortgage payments, but the sale did not take place.

In a memorandum of decision, the court found in favor of the defendant on both counts. The plaintiff

appeals from that judgment. Additional facts will be set forth as necessary.

I

The plaintiff makes two claims regarding the fraud count. She first claims that it was improper for the court not to find that the defendant transferred property in the name of Carusone Associates, LLC, to himself individually, without receipt of reasonable value. She further claims that this conveyance rendered the transferor unable to meet its obligations. Because we employ the same standard of review to both claims, we will address them together. The defendant argues that the court properly found that the plaintiff had not sustained her burden of proof. We agree with the defendant.

The court, referring to the plaintiff's complaint alleging fraud on the part of the defendant, reviewed the facts as they applied to General Statutes § 52-552e (a), which provides in relevant part: "A transfer made . . . by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation . . . ." The court also relied on the principles set forth in *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 680 A.2d 1314 (1996), which states: "In the area of fraudulent conveyances, we have held that [t]he party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) *that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations*; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." (Emphasis in original; internal quotation marks omitted.) Id., 115–16. "The

determination of whether a fraudulent transfer took place is a question of fact and it is axiomatic that [t]he trial court's [factual] findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . The elements of fraudulent conveyance, including whether the defendants acted with fraudulent intent, must be proven by clear, precise and unequivocal evidence." (Citation omitted; internal quotation marks omitted.) *Certain Underwriters at Lloyd's, London* v. *Cooperman,* 289 Conn. 383, 395, 957 A.2d 836 (2008).

The basis for the plaintiff's claims, is the defendant's admission that he executed a quitclaim deed to the Bunker and Broad properties to himself for no consideration. The court concluded that because the defendant did not own the property on the date Smith was injured; did not have any involvement with Carusone Associates, LLC, until he conveyed the properties to himself in May, 2006; transferred the properties to himself in accordance with the terms of his agreement with Carusone Associates, LLC, and the property at the time of the transfer had zero equity,[2] there was no convincing proof of fraud on the part of the defendant.[3] Further,

---

[2] When the properties were transferred to the defendant, they were worth $400,000. At that time, the balance due on a promissory note payable by Carusone Associates, LLC, and Meriden to Berbero Management Corporation secured by a mortgage on the properties was $240,000, with a further balance on existing loans of $250,000 and another $50,000 owed for water, sewer and property taxes.

[3] During the trial, the plaintiff's counsel stated: "I will admit that the allegation [of fraud] requires proof that was not presented in this hearing. I think the characterization of the transfer in being fraudulent, in that if it was done without consideration rendering the debtor insolvent, I think does

the court found that the plaintiff had not shown that the conveyance of the property rendered the transferor unable to meet its obligations. In fact, there was no evidence presented to show that Carusone Associates, LLC, cannot meet its obligations to the plaintiff. On the basis of the court's findings of fact regarding the long-standing agreements between the defendant, Carusone Associates, LLC, and Meriden as well as the findings regarding the status of the mortgage notes when the parcels were conveyed, we conclude that the court properly rendered judgment in favor of the defendant on the claim of fraud.

## II

Our inquiry does not end, however, with the conclusion that the evidence failed to prove the elements of the fraud. The plaintiff urges this court to conclude that the trial court improperly found that she failed to prove justification for piercing the corporate veil. Alternatively, the plaintiff claims that the court should have found that the instrumentality rule applied to this case. The defendant argues that the plaintiff is asking this court to redetermine facts and to conclude, ultimately, that the trial court abused its discretion in rendering judgment in favor of the defendant. We agree with the defendant.

"[W]hether the corporate veil [should be] pierced presents a question of fact . . . such that we must defer to the court's findings of fact unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 148, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). "Courts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate

create a fraud, but I'm not saying that there was an intent to defraud this particular [plaintiff] in that situation."

structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." (Internal quotation marks omitted.) *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, 187 Conn. 544, 552, 447 A.2d 406 (1982). This state recognizes two theories under which it will permit the protection of the corporate structure to be set aside, the instrumentality rule and the identity rule. *Morris* v. *Cee Dee, LLC*, 90 Conn. App. 403, 414, 877 A.2d 899, cert. granted on other grounds, 275 Conn. 929, 883 A.2d 1245 (2005) (appeal withdrawn March 13, 2006).

"The instrumentality rule requires . . . proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . .

"The identity rule has been stated as follows: If [the] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Citations omitted; internal quotation marks omitted.) *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, supra, 187 Conn. 553–54.

A review of the record clearly shows that the defendant, unaware of the plaintiff's legal action, transferred the properties to himself in accordance with the terms of the agreement dated May 28, 2004. The court found, and the record does not contain information to dispute the fact, that once title to the properties was conveyed by the defendant to Carusone Associates, LLC, in May, 2004, the defendant had no involvement with Carusone Associates, LLC. Further evidence of the defendant's independence from Carusone Associates, LLC, highlighted by the court, was that in July, 2005, and February, 2006, Carusone Associates, LLC, conveyed the Broad property and 168 Cook Avenue, two of the six properties originally conveyed from the defendant, to other persons. The record is clear that the defendant did not have the unity of interest and ownership such that the independence of the corporations, Carusone Associates, LLC, and Meriden, and the defendant, ceased to exist; it also is clear that there was no present control used by the defendant to commit fraud, nor was the alleged control a proximate cause of the loss complained of. The court was correct in finding that the instrumentality rule and the identity rule did not apply on the basis of the facts found, and, therefore, the corporate veil could not be pierced on that basis.

The judgment is affirmed.

In this opinion the other judges concurred.